**Hala O. MAYERS, Plaintiff,**

v.

**WASHINGTON ADVENTIST HOSPITAL et al., Defendants.**

**No. CIV. A. AW–99–3549.**

United States District Court, D. Maryland, Southern Division.

Feb. 27, 2001.

Dennis A. Baird, Carlotta P. Jarvis, Silver Spring, MD, for Plaintiff.

Jeffrey Jules Pargament, Andrew P. Hallowell, Frank Charles Gulin, Piliero, Mazza & Pargament, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff, Hala Mayers, brings the instant action alleging that her discharge by Washington Adventist Hospital ("Washington Adventist"), Adventist Healthcare, and Fred Morgan (collectively "Defendants") was based upon her race, national origin, and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1324b (the "IRCA") and in breach of an implied employment contract. Currently pending before the Court is Defendants' Motion for Summary Judgment [26–1]. The basic premise of Defendants' motion is that Plaintiff has failed to exhaust her administrative remedies. The motion has been fully briefed by all parties. No hearing is deemed necessary. *See* Local Rule 105.6. Upon consideration of the arguments made in support of, and opposition to, the motion, the Court makes the following determinations.

## I. FACTUAL BACKGROUND

Plaintiff was employed as a reimbursement specialist by Defendants from March 29, 1999 through June 21, 1999 when she was terminated. It is undisputed that regular attendance was an essential function of Plaintiff's employment. At the beginning of her employment, Plaintiff informed her employer that she suffered from asthma and allergies. For the six months prior to her employment, Plaintiff's asthma was under control. She had been off all asthma medications since December 1997. However, her condition can be aggravated by seasonal changes, extreme environmental conditions, and dust. At times, she uses an inhaler and a variety of other medications to alleviate the symptoms of her asthma. (Mayers Dep. at 85) In instances of high levels of heat or pollen, she may also wear a face mask to assist her breathing. (Mayers Dep. at 86)

Plaintiff began her employment on March 29, 1999 and performed without incident. On April 29, 1999, Plaintiff experienced an asthma attack at work. The attack was attributed to the cold air ema-

nating from a vent over her work station. Under doctor's orders, Plaintiff was not to return to work until Saturday, May 1, 1999. She returned to work on the following Tuesday, May 4, 1999. On May 10, 1999, Plaintiff was absent again for reasons unrelated to her asthma. There is some dispute as to whether Plaintiff properly complained as to the location of her work station. Defendants argue that she never complained to Fred Morgan or Ken Harvey, her supervisors, as required by the employee handbook. Plaintiff maintains she complained to John Farley, the Lead Reimbursement Specialist. Mr. Farley denies ever receiving such a request. Nevertheless, Plaintiff's work station was moved away from the vent on May 13, 1999.

From June 7–8, 1999, the air conditioning of the building failed. The equipment failure caused Plaintiff's workplace to become very hot and humid. On June 8, 1999, Plaintiff suffered another asthma attack. Her doctor stated that the attack was caused by the heat and dust. Defendants maintain that the building was adequately maintained by a cleaning service. According to Plaintiff, the office was so dusty that her co-workers vacuumed the workplace themselves. Her doctor advised Plaintiff not to return to work until June 21, 1999. When she returned to work on that day, Fred Morgan terminated her employment for excessive absenteeism. Plaintiff was absent for 20% of her scheduled work days. According to Defendants' employment policy given to Plaintiff, absenteeism in excess of 3% is considered excessive. In November 1999, Plaintiff initiated this instant suit.

## II. *DISCUSSION*

### A. *Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lob-*

*by, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D.Md.1998). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). Entry of summary judgment is proper, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390, 393 (4th Cir.1994).

### B. *Exhaustion of Administrative Remedies*

Defendants assert that Plaintiff has failed to exhaust her administrative remedies on all of her claims. On June 26, 1999, Plaintiff filed out an Equal Employment Opportunity Commission ("EEOC") intake questionnaire for ADA claims. On August 1, 1999, Plaintiff filed a charge of discrimination with the EEOC. The charge only alleged discrimination based upon disability. Plaintiff asserts that these filings are sufficient to satisfy the exhaustion requirement as to all of her discrimination claims.

Title VII and the ADA require civil rights plaintiffs to file timely charges of discrimination before pursuing a private claim in state or federal court. *See* 42 U.S.C. § 2000e–5(e)(1); *Edelman v. Lynchburg College*, 228 F.3d 503, 506 (4th Cir.2000). In a deferral state like Maryland, the charge must be filed with the EEOC, or the applicable state or local agency, within 300 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e–5(e)(1). Similarly, the IRCA re-

quires a claimant to file a charge with the Office of Special Counsel for Immigration–Related Unfair Employment Practices before pursing a private action against the employer. *See* 8 U.S.C. § 1324b(d)(2). A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit. *Smith v. First Union Nat. Bank,* 202 F.3d 234, 247 (4th Cir.2000). "Only those discrimination claims stated in the initial charge, those reasonably related to the initial charge, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII law suit." *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 963 (4th Cir.1996). Applying these principles, the Court shall consider whether Plaintiff satisfied the exhaustion requirements of the respective statutes.

1. *Count I (Discrimination Based on Race) and Count II (Discrimination Based on National Origin)*

■ A review of Plaintiff's EEOC charge reveals that nowhere in the charge did she raise any claims or allegations related to discrimination based upon race or national origin. The charge rather specifically limits its scope to discrimination based upon disability. None of the facts alleged in the charge reasonably relate to claims of discrimination based upon race or national origin nor would such claims be reasonably expected to arise from an EEOC investigation. *Accord Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 223 (8th Cir.1994); *Harris v. American Protective Services of New York, Inc.,* 1 F.Supp.2d 191, 195 (W.D.N.Y.1998). There is no evidence that any charge of discrimination upon national origin was filed with the Office of Special Counsel. As a result, Defendants have established that there is no genuine dispute of material fact as to Plaintiff's failure to exhaust her administrative remedies on her allegations of discrimination based upon race or national origin. Accordingly, the Court concludes that Defendants are entitled to

summary judgment on Counts I (race) and II (national origin).

2. *Count III (Discrimination on the Basis of Disability)*

On the ADA claim, it is undisputed that Plaintiff did file a timely charge of discrimination based upon disability. Rather, Defendants maintain that Plaintiff's ADA claim is limited to the specific allegations of misconduct listed in the formal EEOC charge. In the charge, Plaintiff stated that "I believe I was discriminated against because my employer *regarded me to have a disability,* in violation of the [ADA]." (EEOC Charge of Discrimination dated Aug. 1, 1999) (emphasis added). According to Defendants, this language precludes Plaintiff from asserting that she was discriminated against due to an actual disability or its failure to provide reasonable accommodations.

■ On the question of the amount of detail required in the charge, the Court finds the general allegation of disability discrimination is insufficient to satisfy the exhaustion requirement. There is, simply, no factual predicate in the EEOC charge to support a reasonable accommodation claim. Plaintiff's EEOC charge succinctly describes the timing and circumstances of her discharge. The charge specifically confines the dates of the alleged discrimination to the day of Plaintiff's termination, setting the earliest and latest dates at June 21, 1999. The charge is completely devoid of any reference to her alleged request for accommodation in May 1999. Under these circumstances, the Court cannot find that the EEOC charge encompassed a claim for failure to make reasonable accommodations. *Accord Jones v. Sumser Retirement Village,* 209 F.3d 851, 853 (6th Cir.2000); *Rankin v. Greater Media, Inc.,* 28 F .Supp.2d 331, 339–40 (D.Md. 1997). As a result of her failure to exhaust the available administrative remedies, the Court finds that Plaintiff cannot advance an ADA claim on the theory of

her employer's alleged failure to provide reasonable accommodations.

■ As to Plaintiff's assertion that she was discriminated against due to an actual disability, the Court finds that the charge is sufficient to satisfy the exhaustion requirement. As the claims asserted in a complaint must be reasonably related to those described in the EEOC charge, "[c]ourts ... do not rigidly limit a plaintiff to the precise words of the administrative charges ." *Johnson v. Maryland,* 940 F.Supp. 873, 876 (D.Md.1996). On the EEOC charge, Plaintiff checked "disability" as the basis for her claim of discrimination. The statement of particulars describes the circumstances of her discharge and her belief that the discharge was motivated by her employer's alleged discriminatory animus toward the disabled. She recites her employer's reason for discharging her as absenteeism. From these allegations, it could be reasonably expected that an EEOC investigation would discover that Plaintiff actually suffered from asthma, the asserted disability, not only that her employer *regarded* her as suffering from asthma. *See Lane v. Wal–Mart Stores East, Inc.,* 69 F.Supp.2d 749, 755–56 (D.Md.1999) (finding claim of actual disability fell within scope of EEOC charge that stated discrimination based upon perceived disability); *Dickens v. Indopco, Inc.,* 9 Nat'l Disability Law Rep. ¶ 334 (N.D.Ill.1997) ("[I]t would be unreasonable, in light of the other facts in the charge, to read 'perceived' to mean that [the plaintiff] did not really have a disability, or that the extent of his impairment was just a creature of [the defendant's] imagination or a function of its attitude."). It is undisputed that Plaintiff informed Defendants of her asthma. (Pl.'s Opp'n Ex. 1 at 2) As known by her employers, a large number of Plaintiff's absences stemmed from her asthmatic condition. When she suffered asthma attacks at work, Plaintiff was treated at Washington Adventist. She submitted doctors' notes indicating that her absences were caused by her asthma. Her employer terminated her, in large part, due to the absences arising from that medical condition. The same allegations and facts included within the EEOC charge could reasonably support an ADA claim asserting discrimination on the basis of an actual disability. *See Pellack v. Thorek Hosp. & Med. Ctr.,* 9 F.Supp.2d 984, 989 (N.D.Ill.1998) (finding perceived disability theory was reasonably related to charge of discrimination based upon actual disability). Therefore, the Court finds that Plaintiff has exhausted her administrative remedies on her ADA claim on a theory of discrimination based upon an actual disability. Thus, the Court will turn to the merits of Plaintiff's claim that she was discharged because of her alleged disability, asthma.

## C. Count III (Discrimination on The Basis of Disability)

Plaintiff alleges that Defendants wrongfully discharged her because she suffered from asthma in violation of the ADA. "To the extent possible, [courts are to] adjudicate ADA claims in a manner consistent with decisions interpreting the Rehabilitation Act." *Ennis v. National Ass'n of Business and Educational Radio, Inc.,* 53 F.3d 55, 57 (4th Cir.1995). Under both statutes, the Fourth Circuit analyzes claims of discriminatory discharge under the *McDonnell Douglas* framework. *See id.* at 58; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Thus, "in a typical discharge case brought under the ADA, a plaintiff must prove by a preponderance of the evidence that (1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Ennis,* 53 F.3d at 59. Therefore, as a preliminary matter, Plain-

tiff must advance a qualifying disability that would entitle her to the ADA's protections.

■ Plaintiff alleges that her asthma and allergies qualify as physical or mental impairments that substantially limit her ability to perform the major life activities of breathing and working. Under the ADA, the disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or © being regarded as having such an impairment." 42 U.S.C. § 12102(2). It is undisputed that Plaintiff suffered from asthma. Breathing qualifies as a major life activity. *See* 29 C.F.R. § 1630.2(I). Courts have recognized that asthma is a physical impairment that affects the respiratory system *See Heilweil v. Mt. Sinai Hospital,* 32. F.3d 718 (2d Cir.1994); *Rhoads v. F.D.I.C.,* 956 F.Supp. 1239, 1246 (D.Md. 1997). Nevertheless, these facts alone are not sufficient to demonstrate a disability under the ADA. Plaintiff must still establish that her asthma and allergies substantially limit her ability to breathe. Under the ADA, "substantially limits means: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). The determination of whether an impairment substantially limits an individual's life activities is made on a case-by-case basis taking into account corrective measures that may alleviate the severity of the symptoms. *See Sutton v. United Airlines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 2149–50, 144 L.Ed.2d 450 (1999); *Tangires v. Johns Hopkins Hosp.,* 79 F.Supp.2d 587, 595 (D.Md.2000).

■ In the present case, it is undisputed that Plaintiff's asthma did cause adverse effects on her breathing for seven months before she began working for Defendants. Several months after her termination, Plaintiff's asthma was again brought under control. Moreover, the available evidence indicates that Plaintiff only experienced temporary difficulty in breathing when subject to the extreme environmental conditions allegedly found in her former workplace or seasonal changes. Under these circumstances, the Court concludes Plaintiff has not produced sufficient evidence to demonstrate that her asthma substantially limits her ability to breathe. *Accord Tangires,* 79 F.Supp.2d at 595; *Rhoads,* 956 F.Supp. at 1247.

■ Consequently, Plaintiff's ADA claim now rests upon demonstrating that her asthma and allergies substantially limited her ability to work. "To establish that [an impairment] substantially limited her ability to work, [Plaintiff must] show not merely that her [asthma and] allergy made her 'incapable of satisfying the singular demands of a particular job,' but that it 'foreclose[d] generally [her opportunity to obtain] the type of employment involved[.]'" *Gupton v. Virginia,* 14 F.3d 203, 205 (4th Cir.1994) (quoting *Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986)); 29 C.F.R. § 1630(j)(3)(I), App. It is undisputed that, with proper medication, Plaintiff's asthma has been and can be controlled. (Pl's Comp., Note from Dr. Ho Smith dated Sept. 13, 1999) Her allegations assert that the particular working environment at Washington Adventist (dust and an extreme temperature changes) aggravated her asthma and allergies. There is "no evidence that her allergy [or asthma] foreclosed her generally from obtaining jobs in her field." *Gupton,* 14 F.3d at 205. Plaintiff has produced no evidence suggesting that her asthma or allergies preclude her from performing similar work in other buildings that do not pose the same environmental irritants found in her former workplace. *See Heil-*

*weil v. Mt. Sinai Hospital,* 32 F.3d 718 (2d Cir.1994) (finding plaintiff was not disabled when only poor ventilation of particular building aggravated asthma); *Rhoads,* 956 F.Supp. at 1246–47 (plaintiff with allergies to smoke was not foreclosed from performing similar work in a smoke-free environment); *Gerdes v. Swift–Eckrich, Inc.,* 949 F.Supp. 1386 (N.D.Iowa 1996); 29 C.F.R. § 1630.2(j). By contrast, Plaintiff admits that she can work without incident in a reasonably clean environment with functioning temperature controls. Additionally, it is undisputed that Plaintiff held a second job during her employment with Defendants. From the available evidence, the Court concludes that, as a matter of law, Plaintiff cannot establish that she suffers from an impairment that substantially limits a major life activity as defined under the ADA.

Alternatively, Plaintiff posits that her employer regarded her as disabled and discharged her for that reason. As discussed earlier, a claimant may qualify as "disabled" under the ADA if she suffered an adverse employment decision because her employer "regarded" her as having an impairment that substantially limited a major life activity. 42 U.S.C. § 12102(2)(C). Application of this definition of disability requires that "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 2149–50, 144 L.Ed.2d 450 (1999). "An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Sutton,* 527 U.S. at 490, 119 S.Ct. at 2150.

The facts of the present case indicate that her supervisor not only believed Plaintiff could perform the normal duties of a reimbursement specialist, but also expected such performance from her. After receiving medical clearance for work, Plaintiff returned to the same position without any alteration in her duties or responsibilities. When Plaintiff complained that the air vent aggravated her asthma, her supervisors relocated her work station at her request. Furthermore, the duties of a reimbursement specialist required regular attendance. "[A] regular and reliable level of attendance is a necessary element of most jobs." *Tyndall v. Nat'l Educ. Centers,* 31 F.3d 209, 213 (4th Cir.1994). The ADA protects claimants from adverse employment decisions based upon unfounded perceptions, stereotypes, and myths concerning the abilities of disabled individuals. *See* Comment, 29 C.F.R. § 1630.2(1). By contrast, Plaintiff's attendance record of missing 20% of her scheduled work days within the first three months of employment demonstrates her real difficulty in satisfying the attendance requirements of her particular job. *See Rogers v. Int'l Marine Terminals,* 87 F.3d 755 (5th Cir. 1996) (finding that chronically absent employee was not discharged because employer perceived him as disabled). Defendants' employment policy clearly stated that absenteeism in excess of 3% was considered excessive. An employer's recognition of an employee's attendance history in making employment decisions does not necessarily support the conclusion that the employee was subject to unlawful discrimination decisions because of a perceived disability. *See Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1230 (11th Cir.1999). Such considerations recognize that "an employee 'who does not come to work cannot perform any of his job functions, essential or otherwise.'" *Tyndall v. Nat'l Educ. Centers,* 31 F.3d at 213 (quoting *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn. 1986)). Given that Plaintiff exceeded the employer's attendance benchmark, the Court finds that Mr. Morgan discharged

Plaintiff due to her excessive absenteeism rather than some erroneous stereotype that her asthma and allergies substantially limited her ability to work. Even drawing all reasonable inferences in favor of the nonmoving party, the Court concludes that Plaintiff has failed to produce sufficient evidence to establish that she falls within any definition of "disabled" under the ADA. Given that Plaintiff cannot establish the first essential element of her *prima facie* case for disability discrimination, the Court holds that Defendant is entitled to summary judgment on Count III as well.

### D. *Count IV (Breach of Contract)*

 Finally, Plaintiff argues that Defendants promulgated a "No Discrimination Policy" in its employee handbook which formed an implied employment contract. Plaintiff maintains that Defendants breached this contract by discriminating against her on the basis of her race, national origin, or disability. In exercising its power over supplemental state claims, the Court applies the substantive laws of the forum state, Maryland. *See, e.g., Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is undisputed that Plaintiff was an at-will employee subject to discharge with or without cause. (See Def. Mot. Summ. J. Ex. 9) In Maryland, personnel policies and procedures for termination set forth in an employee handbook may support a breach of contract action by an at-will employee. *See, e.g., Suburban Hospital v. Dwiggins,* 324 Md. 294, 596 A.2d 1069, 1074–75 (1991); *Staggs v. Blue Cross of Md., Inc.,* 61 Md.App. 381, 486 A.2d 798, 801 (1985). However, an employer may expressly disclaim such contractual liability. *Bagwell v. Peninsula Reg'l Med. Ctr.,* 106 Md.App. 470, 665 A.2d 297, 309 (1995); *Castiglione v. Johns Hopkins Hosp.,* 69 Md.App. 325, 339–41, 517 A.2d 786, 793 (Md.1986). In *Zahodnick v. Int'l Business Machines Corp.,* the Fourth Circuit found that a disclaimer in an employee handbook specifying that the employer reserves the right to modify the handbook at any time, that the employment relationship was at will, and that the relationship could be ended at any time for any reason by the employee or by the employer was sufficiently clear and unambiguous to insulate the employer from contractual liability. 135 F.3d 911, 914–15 (4th Cir.1997) (interpreting Maryland law). At the outset of her employment, Plaintiff signed an acknowledgment card that accompanied the employee handbook which stated, in pertinent part,

> The information in this handbook is subject to change without notice by action of Adventist HealthCare's president .... This handbook is not a contract or legal document. Publishing of the basic benefits or policies in it does not infer any rights or privileges for me or entitle me to remain employed. I understand that Adventist Healthcare follows the employment 'at will' doctrine. Accordingly, either Adventist Healthcare or I can terminate the employment relationship at any time, with or without cause or notice.

(See Def. Mot. Summ. J. Ex. 9) Maryland courts have found such language sufficient to disclaim liability. *See Hrehorovich v. Harbor Hospital,* 93 Md.App. 772, 794, 614 A.2d 1021 (1992); *Castiglione,* 69 Md.App. at 339–41, 517 A.2d 786. After receiving the above information, the Court finds that Plaintiff could not have justifiably relied on the expressed personnel policies as serving the basis of an employment contract. Thus, Defendants have demonstrated that there is no genuine dispute of material fact that Plaintiff cannot sustain a breach of contract action based upon the employee handbook. Accordingly, the Court concludes that Defendants are entitled to summary judgment on Count IV.

### III. CONCLUSION

In summary, the Court finds that Plaintiff has failed to exhaust her administrative remedies as to Count I (racial discrimination), Count II (discrimination on the basis of national origin), and her claim of

Defendants' failure to make reasonable accommodations under Count III of her Amended Complaint. Although Plaintiff exhausted her administrative remedies on theories of an actual and perceived disability under Count III, the Court concludes that she is not disabled under the ADA and, therefore, cannot establish a *prima facie* case for disability discrimination. Finally, the Court determines that Count IV (Plaintiff's breach of contract claim) fails because her employer sufficiently disclaimed such contractual liability. For the reasons stated above, the Court will grant Defendants' Motion for Summary Judgment as to all counts of Plaintiff's complaint. An Order consistent with this Opinion will follow.